Shawn **GILCHREST**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 07–94–0067–CR.

Court of Appeals of Texas,
Amarillo, Panel D.

Aug. 14, 1995.

Law Offices of Hollis M. Browning, Hollis M. Browning, Lubbock, for appellant.

Lubbock County District Attorney, Travis S. Ware, Michael West, Lubbock, for appellee.

Before REYNOLDS, C.J., and BOYD and QUINN, JJ.

QUINN, Justice.

Appellant, Shawn Gilchrest, was convicted of aggravated robbery. The jury assessed punishment at 16 years and a fine of $5,000.00. Through six points of error, he asked whether new trial was warranted due to the State's violation of a motion in limine, whether sufficient evidence supported his conviction, and whether he was entitled to an instruction on the lesser offense of assault. To each question we answer no and, therefore, affirm the judgment.

## POINT OF ERROR ONE

Appellant initially assails the trial court for refusing to grant him a mistrial. He was allegedly entitled to same because the State proffered testimony violative of an order granting his motion in limine. The order directed the prosecution to forego mentioning certain evidence until it ruled on admissibility. The evidence subject to the order included "[a]ny extraneous offense other than the one alleged against the [appellant] in the ... indictment" and "[a]ny prior acts of misconduct ... whether resulting in final conviction or not."

Four purported violations occurred, according to appellant. First, during voir dire, the prosecutor commented that

> ... voluntary intoxication is not a defense to the commission of a crime. And we expect there may be some evidence that the defendant had been drinking, or using drugs, or something. He may have been intoxicated in some way....

Appellant immediately "objected to ... [the State] submitting *that kind of stuff* in front of this jury panel." (Emphasis added). The legal basis for the objection went undisclosed. Nevertheless, it was sustained, and appellant requested nothing further.

Second, a police officer testified that he had "confiscated the license plate [from the truck in which appellant was found because] it belonged to another vehicle." Thereafter, the following exchange ensued:

Appellant: Your Honor, I object.

Court: Sustained.

Appellant: I request an instruction. May we approach the bench?

Court: Sure. Come on up.

Appellant: This is something—

Court: Who do you want me to instruct?

Appellant: I understand, but I don't know what to do, because she was specifically ordered to instruct her witnesses not to do exactly what she just got through doing.

Court: All right.

Appellant: And I don't know that there's enough—enough of—and she just threw it in there at that point, but I don't know what else to do.

Court: What do you want me to do?

Appellant: Grant a mistrial.

Court: Denied.

Appellant: *And instruct her to make sure that none of her other witnesses do this.*

Prosecutor: *I told him not to say that the truck was stolen, or the plates were stolen, or anything.*

Court: Well, he just did.

Prosecutor: Well, he said he confiscated, because they didn't belong there.

Court: It belonged to another vehicle. It was pretty obvious. Either he didn't understand or—

Prosecutor: *Because I told him to not say that it was stolen, or the truck was stolen, or anything.*

Court: Well, if he says anything else like that, or even remotely similar to that, then I'm going to grant a mistrial.

Prosecutor: Okay.

Court: So, if you want to visit with him again, fine. If you want to risk it, fine.

Prosecutor: *I'll just move on.*

(Emphasis added). Nothing further of the confiscated plates was said.

Third, when asked about the demeanor of appellant, an officer answered

[w]ell, not really scared. He appeared to be more like, you know, I've been stopped before by the police, you know, no big deal.

The reply was met with no objection.

Finally, in discussing the transportation of a witness to view the appellant for purposes of identification, an officer was asked "[a]nd how was Mr. Stone in the back of your car?" He responded that "[h]e was rather nervous and very apprehensive. I had a baseball cap with our police badge on it that we wear sitting between my prisoner shield and the back seat . . . [a]nd he asked if he could wear my hat, maybe so they wouldn't recognize him." The witness, according to the policeman, was worried about "retaliation." This passage met with no objection, either.

With regard to the last two incidents, the failure to object resulted in the waiver of any complaint thereto. *Tex.R.App.P.* 52(a). The omission was not cured by the court having previously granted a motion in limine. Despite the order, appellant remained obligated to proffer a timely and specific objection. *Rawlings v. State,* 874 S.W.2d 740, 742–43 (Tex.App.—Fort Worth 1994, no pet.).

With regard to the first and second incidents we note that though appellant may have objected, his complaint was too general. Rule 52(a) of the appellate rules of procedure burdened him with "stating the specific grounds for the ruling he desired." Neither the phrase "I object" nor "I object to them submitting *that kind of stuff*" satisfied the requirement. (Emphasis added).

Alternatively, and assuming his objection was specific, other prerequisites to securing mistrial went unperformed. For instance, in situations where the potential harm can be vitiated by an instruction to disregard the inadmissible evidence, such as when reference to extraneous misconduct is inadvertent and isolated, *Nobles v. State,* 843 S.W.2d 503, 514 (Tex.Crim.App.1992), the complainant must ask the court to so instruct the jury. *Jones v. State,* 825 S.W.2d 470, 471 (Tex. App.—Corpus Christi 1991, pet. ref'd); *Penry v. State,* 691 S.W.2d 636, 649–50 (Tex. Crim.App.1985). No instruction of that sort was requested here. Appellant either moved for mistrial or forgot the matter altogether. Because of this, and given the isolated and inadvertent nature of the grievances, any right to mistrial was waived. *See State Bar of Texas v. Evans,* 774 S.W.2d 656, 658 n. 6 (Tex.1989) (holding that the failure to request a jury instruction constituted waiver of the evidentiary complaint); *Penry v. State,* 691 S.W.2d at 649–50 (holding that the appellant fatally deviated from the long standing rules on preserving error by moving for mistrial without first objecting). Thus, we overrule point one.

## POINTS OF ERROR TWO, THREE, FOUR AND FIVE

In his next four points, Appellant questioned the sufficiency of the evidence supporting his conviction. His success depended upon whether any rational trier of fact could have found the existence of each element of the crime beyond reasonable doubt. *King v. State,* 895 S.W.2d 701, 703 (Tex.Crim.App.1995); *Wilson v. State,* 879 S.W.2d 309, 311 (Tex.App.—Amarillo 1994, no pet.). In making that determination, we act not as a thirteenth juror but as a bastion of due process ensuring the rationality of the verdict. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). Thus, deference must be accorded the fact finder's ability to see witnesses first hand, resolve credibility disputes, and reconcile conflicting evidence. Furthermore, the decision is rational if supported by more than a modicum of evidence. *Id.*[1]

### a. Facts

At bar, the evidence reveals that appellant and Mark Hanson sojourned from Amarillo

---

1. Contrary to appellant's suggestions, the evidence of guilt need not rebut every reasonable hypothesis of innocence to withstand attack. *Geesa v. State,* 820 S.W.2d 154, 155 (Tex.Crim.

in a borrowed pickup truck on June 7, 1993. Having arrived in Lubbock, the two drove around and eventually parked in a local grocery store lot at 7:30 a.m. Noting that they "were totally broke," Hanson began "talking about stealing someones [sic] purse." The two originally planned for appellant to drop his companion off, for appellant "didn't want to do it [him]self." Once a victim was found and her purse taken, appellant would then "drive by and pick [Hanson] up in the truck." Soon they spied Ms. Louester Marshall, a 76 year old widow and grandmother, briskly walking across the lot.

As the proposed victim drew near, Hanson, who sat in the passenger seat, asked her for directions to Slide Avenue. Ms. Marshall answered, turned and attempted to walk away. As she did, Hanson reached out and grabbed her wrist, thereby pulling her arm and purse into the cab of the truck. Appellant immediately started the vehicle and "took off like a bat out of hell." The acceleration jerked Ms. Marshall off her feet. Though "pulling with all [her] might . . . [she] could not get loose" as the truck dragged her along the pavement. Hanson eventually "peeled" her arm and removed the purse. The lady then fell to the ground and landed on her right side. Skin hung from her elbows to her wrists as she held her arms out "to keep the blood off [her] clothing." Medical examination revealed bruising and severe lacerations.

Within ten minutes, appellant and his cohort were apprehended. By that time, Hanson had taken $60 from the purse.

### b. Substantive Offense and Party Liability

One commits aggravated robbery if, in the course of committing theft and with the intent to obtain control of the property, he causes serious bodily injury to another or bodily injury to a person 65 years old or older. *Tex.Pen.Code Ann.* § 29.03(a)(1) & (3) (Vernon 1994). One commits theft by unlawfully appropriating property with intent to deprive the owner, *id.* at § 31.03(a), and, finally, appropriation is unlawful if made without the owner's effective consent. *Id.* at § 31.02(b)(1).

 Furthermore, the umbrella of liability often includes more than the individuals who actually performed the crime. Those acting with him, via a common purpose or design, with each contributing towards the outcome, are also guilty of the offense. *Cornejo v. State,* 871 S.W.2d 752, 755 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd); *Burdine v. State,* 719 S.W.2d 309, 315 (Tex. Crim.App.1986). Moreover, the defendant's presence at the scene and his encouragement through word or agreement provide sufficient evidence to warrant conviction. *Burdine v. State,* 719 S.W.2d at 315.

### c. Application of Facts to Law

 Summary of the evidence at bar revealed two individuals without monies. To rectify their situation one proposed stealing a purse. Though the other did not want to take the item himself, he nevertheless, agreed to help. His assistance would come in the form of operating the getaway vehicle. Furthermore, their eventual victim was a 76 year old woman. Once Hanson had grabbed her purse, which she would not release, appellant completed his part of the plan by driving away. In the process, the victim suffered bodily injury. This evidence constituted more than a modicum of proof of aggravated robbery. It illustrated an appropriation of property from its owner without the owner's consent, resulting in bodily injury to the 76 year old owner while the culprits attempted to gain control of the property. It further illustrated an agreement by the appellant to help complete the crime.

The circumstances here liken to those in *Brewer v. State,* 852 S.W.2d 643 (Tex.App.—

App.1991) (rejecting the "reasonable hypothesis" test invoked by the appellant here). Nor must it's great weight preponderate in favor of the verdict. *Wilson v. State,* 879 S.W.2d 309, 311

(Tex.App.—Amarillo 1994, no pet.) (refusing to apply the factual sufficiency analysis utilized in civil cases and invoked by the appellant here).

Dallas 1993, no pet.) and *Webber v. State,* 757 S.W.2d 51 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). In the former, the accused blocked the victim's escape, allowed the actual robber to exit the vehicle, and later retrieved him. In the latter, the defendant awaited the return of her companion then drove him away. Their efforts to reverse their convictions for aggravated robbery went rebuffed. We find no reason to deny the precedential weight of those two cases and conclude that appellant's conviction was also founded upon sufficient evidence.

That the jurors refused to believe appellant's defense, that is, that he was simply a victim of fear, does not mandate a different outcome. They were free to weigh the argument and discredit its veracity. Accordingly, points of error two through five are overruled.

## POINT OF ERROR SIX

### a. Authorities

 In his final point of error, appellant contends that he was entitled to a charge on the lesser included offense of assault. He was correct if the charge requested was a lesser offense and "some evidence" appeared of record indicating that if he were guilty, it was only of the lesser offense. *Robertson v. State,* 871 S.W.2d 701, 706 (Tex. Crim.App.1993). "[S]ome evidence" existed if it was of an amount which permitted the jury to rationally find only commission of the lesser crime. *Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex.Crim.App.1993). Furthermore, the evidence could have met this standard in either of two ways. *Saunders v. State,* 840 S.W.2d 390, 391 (Tex.Crim.App. 1992). First, it could have refuted an element of the greater offense or, second, been subject to differing interpretations. *Robertson v. State,* 871 S.W.2d at 706; *Saunders v. State,* 840 S.W.2d at 391–92. However, simply denying commission of the crime would have gained him nothing. *Saunders v. State,* 840 S.W.2d at 391–92 (holding that the defendant must do more than just deny commission of the offense).

### b. Application

 Appellant objected to the court's charge due to its failure to include the lesser offense of assault. The evidence allegedly entitling him to the instruction entailed his statements to the police that "he was not the person that committed the particular crime" and that he did not "want to do it [him]self" but knew Hanson was going to take the purse. Because assault is a lesser included offense of aggravated robbery, *Bignall v. State,* 887 S.W.2d 21, 23 (Tex.Crim.App. 1994), we need only focus on whether the two comments amount to "some evidence" under *Rousseau.*

The first does not. It manifests nothing more than a denial of committing the crime. The second, however, is of different ilk. It could be interpreted as suggesting that at one point appellant was unwilling to personally steal a purse though he would acquiesce in his compatriot's doing so. Or, it could be viewed as indicating that, at one point, appellant wanted nothing to do with the theft. Yet, that was not enough for at the instant that Hanson took the purse and appellant sped off, no evidence suggested that appellant acted without an intent to obtain or maintain control over misappropriated property. And, the evidence at the moment of the attack and immediate departure was all controlling. *Rousseau v. State,* 855 S.W.2d at 674 (stating that the "possibility that initially or at some point during the commission of the robbery the offender did not have an intent to cause death does not amount to evidence that the offender did not intend to cause the victim's death when the murder was committed"); *accord, Robertson v. State,* 871 S.W.2d at 706–707 (noting appellant's statement that he returned to the house solely to steal drugs constituted no evidence that he could not have formulated an intent to kill between the time he decided to return to the house and the time he shot the victim). Because no evidence accruing at that point in time negated any element of his involvement in theft, the court did not err in refusing to instruct on lesser included offense.

Accordingly, we affirm the judgment entered below.