Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-08-00792-CR

Frank G. **SAENZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2000-CR-5021
Honorable Dick Alcala, Judge Presiding

Opinion by:   Karen Angelini, Justice

Sitting:     Karen Angelini, Justice
             Steven C. Hilbig, Justice
             Marialyn Barnard, Justice

Delivered and Filed: March 3, 2010

AFFIRMED

A jury convicted appellant Frank G. Saenz of two counts of aggravated sexual assault of a

child. In five issues, Saenz argues the trial court erred in denying his pretrial writ of habeas corpus,

in overruling his objections to extraneous offense evidence, and in overruling his objections to expert

testimony. We overrule Saenz's issues and affirm the judgments of conviction.[1]

---

[1] The record contains a judgment for each count.

### FACTUAL AND PROCEDURAL BACKGROUND

In October 2000, Saenz was indicted for aggravated sexual assault of a child in a six-count indictment. In February 2001, a jury convicted Saenz of three of the counts in the indictment. The conviction was affirmed on appeal. *Saenz v. State*, 103 S.W.3d 541, 548 (Tex. App.—San Antonio 2003, pet. ref'd). Thereafter, the Court of Criminal Appeals granted Saenz's application for a writ of habeas corpus under article 11.07 of the Texas Code of Criminal Procedure and set aside the conviction because of ineffective assistance of counsel. *See Ex parte Saenz*, No. AP-75461, 2006 WL 1687473, at *1 (Tex. Crim. App. 2006) (not designated for publication).

In October 2008, Saenz was reprosecuted on an amended three-count indictment. Two counts involved Saenz's adopted daughter, Y.S. One count involved Saenz's biological daughter, S.S. Both Y.S. and S.S. testified at trial. Y.S., who was twenty-eight years old at the time of trial, testified that during her childhood Saenz touched her sexual organs, performed oral sex on her, and engaged in sexual intercourse with her. The touching and oral sex began when Y.S. was about four or five and continued until she was fourteen. The sexual intercourse began when Y.S. was about thirteen and continued until she was fourteen. S.S., who was also an adult at the time of trial, recanted her earlier statements that Saenz had sexually abused her during her childhood, and the trial court granted a directed verdict on the count involving S.S.

The jury found Saenz guilty of the two counts involving Y.S. Punishment was assessed at ten years and one day imprisonment for each count. The sentences were ordered to run concurrently.

### PRETRIAL WRIT OF HABEAS CORPUS

In his first issue, Saenz argues the trial court erred when it denied his pretrial motion for a writ of habeas corpus. In this motion, Saenz argued his reprosecution violated the double jeopardy provisions of the federal and Texas constitutions.

The double jeopardy provisions of the federal and Texas constitutions protect a citizen from repeated attempts at prosecution for the same criminal offense. *Ex parte Wheeler*, 203 S.W.3d 317, 322 (Tex. Crim. App. 2006). However, if a defendant requests a mistrial, double jeopardy normally does not bar reprosecution. *Id*. Under the federal double jeopardy clause, a retrial is prohibited after the defendant requests and is granted a mistrial only if the prosecution intentionally commits manifestly improper conduct with the intent to provoke that mistrial. *Id*. (citing *Oregon v. Kennedy*, 456 U.S. 667, 672-73 (1982)). The same standard applies under the double jeopardy clause in the Texas constitution. *Lewis v. State*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007).

We review the trial court's ruling on a pretrial writ of habeas corpus for an abuse of discretion. *Ex parte Wheeler*, 203 S.W.3d at 322. In conducting this review, we view the objective facts in the light most favorable to the trial court's ruling. *Id*.

Our disposition of Saenz's first issue is governed by *Ex parte Mitchell*, 977 S.W.2d 575, 576 (Tex. Crim. App. 1997). Like Saenz, the appellant in *Ex parte Mitchell* moved for a mistrial, which was denied, but then had his conviction set aside in a post-conviction habeas corpus proceeding. Thereafter, the appellant in *Ex parte Mitchell* filed a pretrial motion for habeas corpus relief, arguing his reprosecution would violate his rights under the federal and state constitutions. The trial court

denied the motion and the appellate court affirmed. In affirming the judgment of the appellate court, the Texas Court of Criminal Appeals stated,

> The accused's right under the double jeopardy clause to have his trial completed by the first tribunal is clearly protected where, as in the present case, it proceeded to conclusion, i.e., a verdict. Only where the prosecutor's intentional, and deliberate misconduct goads the accused into moving for a mistrial—and that motion is granted—is the accused's right to be tried *to verdict* by the first tribunal, a right afforded him by the double jeopardy clause of the Fifth Amendment, violated. As there was no mistrial in the present case, we hold applicant's double jeopardy rights under the United States Constitution are not violated by the State's retrial of applicant following reversal of his conviction.

*Id*. at 579-80 (emphasis in original). In the present case, as in *Ex parte Mitchell*, no mistrial was granted. Because no mistrial was granted, there was no violation of Saenz's double jeopardy rights.

Saenz recognizes the holding in *Ex parte Mitchell*, but argues, however, that he should be entitled to relief regardless of whether he obtained a mistrial in the trial court, a reversal on appeal, or a reversal in a post-conviction proceeding. Thus, according to Saenz, double jeopardy would be implicated in this case if he could show there was prosecutorial misconduct in his first trial.

In response to Saenz's arguments, the State points out that the double jeopardy provisions of the federal and Texas constitutions do not preclude a retrial following a successful post-conviction remedy. *See Lockhart v. Nelson*, 488 U.S. 33, 38 (1988) ("It has long been settled, however, that the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction."); *United States v. Tateo*, 377 U.S. 463, 463-64 (1964) (holding the retrial of a criminal defendant who had a conviction overturned in collateral proceedings did not offend double jeopardy protection). The

State further argues that even if Saenz could claim a double jeopardy violation by virtue of having his conviction reversed, the record from the pretrial habeas corpus hearing failed to show (1) the commission of intentional prosecutorial misconduct in the first trial, and (2) the intent to provoke Saenz into moving for a mistrial. In fact, the State points out, Saenz's conviction was not reversed because of prosecutorial misconduct, but instead because of ineffective assistance of counsel. We agree with the State's arguments.

We hold Saenz's double jeopardy rights were not violated by his retrial following the reversal of his conviction in a post-conviction proceeding. *See Ex parte Mitchell*, 977 S.W.2d at 581. Accordingly, the trial court did not abuse its discretion in denying Saenz's pretrial writ of habeas corpus. Saenz's first issue is overruled.

### EXTRANEOUS OFFENSE EVIDENCE

In his second issue, Saenz argues the trial court erred by admitting evidence of extraneous offenses against Y.S. because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. We review the admission of evidence under an abuse of discretion standard. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). Under this standard, we overrule complaints about the admission of evidence, as long as the trial court's ruling was within the zone of reasonable disagreement. *Id*.

Here, the indictment alleged Saenz sexually assaulted Y.S. on or about June 1, 1991, and on or about June 1, 1992, when Y.S. was twelve and thirteen years old, respectively. Y.S. testified the June 1, 1991, incident involved Saenz causing his penis to contact her vagina, and the June 1, 1992, incident involved Saenz causing his penis to penetrate her vagina. Saenz contends Y.S.'s testimony

should have been limited to evidence of the two offenses charged in the indictment. Saenz argues the trial court abused its discretion by allowing Y.S. to testify about the history of her relationship with Saenz, which included references to extraneous offenses that occurred over the course of approximately nine years. Over Saenz's Rule 403 objections, Y.S. testified about Saenz touching her vagina in the bathtub when she was about four or five, performing oral sex on her when she was in elementary school, telling her "that's what daddies do," touching her vagina on other occasions when she was between the ages of five and fourteen, taking inappropriate Polaroid photos of her, having sexual intercourse with her "[m]ore than 50, maybe more than 100" times, and giving her wine coolers and beers to get her to relax during sexual intercourse.

> Texas Code of Criminal Procedure 38.37 provides, in pertinent part:
>
> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
>
> (1) the state of mind of the defendant and the child; and
>
> (2) the previous and subsequent relationship between the defendant and the child.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2 (Vernon 2005).

Upon a proper objection, the trial court may exclude relevant evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. The Court of Criminal Appeals has listed several factors that a trial court should consider in conducting a Rule 403 balancing test: (1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v.*

*State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004); *Montgomery v. State*, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1990) (op. on reh'g). Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Williams v. State*, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997).

To sustain this issue, we must conclude the probative value of the evidence was so substantially outweighed by the danger of unfair prejudice that the decision to admit the evidence was not even within the zone of reasonable disagreement. *See* TEX. R. EVID. 403; *Moses*, 105 S.W.3d at 627. Here, Saenz does not challenge the probative value of the evidence presented in this case. To the contrary, Saenz acknowledges the evidence in question was probative. Instead, Saenz emphasizes the prejudicial nature of the extraneous offense evidence, contending Y.S.'s testimony "could not have failed to impress the jury in a way that was both irrational and unforgettable." Saenz also complains about the time it took to develop the evidence, asserting it took two-thirds of a day for Y.S. to testify about these events.

In light of Saenz's arguments, we consider the factors pertinent to the Rule 403 balancing test. First, the evidence in question was highly probative because it demonstrated the history and progression of the relationship between Y.S. and Saenz, and provided insight into both of their states of mind. This factor weighs in favor of the admission of the evidence. Second, the potential to impress the jury in some irrational and indelible way was also high. As even the State acknowledges, evidence of repeated sexual assaults by a father on his daughter beginning at the age of four or five and occurring until the age of fourteen undoubtedly had a strong emotional effect on the jury. This factor weighs against the admission of the evidence. Third, although the evidence took some time develop, we cannot say it diverted the jury's attention from the crucial issues in this case. The

primary issue at trial was whether Saenz sexually assaulted Y.S. Another important issue was Y.S.'s state of mind and her delay in disclosing the assaults. The evidence in question was closely related to these issues. Thus, this factor is neutral. Finally, the State's need for the extraneous offense evidence was also high. This factor involves considering whether the State needed the evidence in question to establish a fact of consequence and whether that fact of consequence was in dispute. *Montgomery*, 810 S.W.2d at 390. Here, the only direct evidence of the charged offenses was from Y.S., who did not disclose the sexual abuse until she was an adult. The defense attacked Y.S.'s credibility and her delay in disclosing the charged offenses. The evidence in question was necessary to help the jury understand why Y.S. might have delayed in disclosing the offenses charged in the indictment. This factor weighs in favor of the admission of the evidence.

After weighing the required factors, we conclude the trial court could have reasonably concluded the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The trial court's decision to admit the extraneous offense evidence was within the zone of reasonable disagreement, and therefore, was not an abuse of discretion. Saenz's second issue is overruled.

In his third issue, Saenz argues the trial court erred by admitting evidence of extraneous offenses against S.S. because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. The record does not show Saenz objected to this evidence at the time of its admission. *See* TEX. R. EVID. 103(a)(1) (stating error may not be predicated upon a ruling which admits evidence unless a timely objection appears of record). Saenz acknowledges this fact, but contends he preserved this issue because he obtained a ruling on this evidence by way of a motion in limine order. We disagree. Notwithstanding a motion in limine order,

a defendant remains obligated to make a timely and specific objection when evidence is offered at trial. *See Gilchrest v. State*, 904 S.W.2d 935, 938 (Tex. App.—Amarillo 1995, no pet.) (holding complaints about the admission of extraneous offense evidence were waived by the defendant's failure to object during trial); *Rawlings v. State*, 874 S.W.2d 740, 742-43 (Tex. App.—Fort Worth 1994, no pet.) ("The granting or denying of a motion in limine, without more, preserves nothing for appellate review."). Saenz's third issue is overruled.

## EXPERT TESTIMONY

Admission of expert testimony is governed by Texas Rule of Evidence 702. *Morales v. State*, 32 S.W.3d 862, 865 (Tex. Crim. App. 2000). Pursuant to Rule 702, a witness may offer an expert opinion if the witness is qualified to do so by knowledge, skill, experience, training, or education and the witness possesses scientific, technical, or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue. TEX. R. EVID. 702. If the trial court determines the underlying facts or data do not provide a sufficient basis for the expert's opinion, the opinion is inadmissible. *See* TEX. R. EVID. 705(c). Before admitting expert testimony under Rule 702, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case. *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006).

We review a trial court's decision to allow expert opinion testimony for an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 765 (Tex. Crim. App. 2007). We must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d

540, 542 (Tex. Crim. App. 2000). Moreover, we review the trial court's ruling in light of the evidence before the trial court at the time the ruling was made. *Id*.

### 1. Testimony of Cheri Estrada

In his fourth issue, Saenz argues the trial court erred in allowing expert testimony from Cheri Estrada, a San Antonio Police Department detective who investigated sexual assault complaints, including the complaint made by Y.S. Saenz argues Estrada was not qualified to render an opinion about delayed outcry and recantation by sexual abuse complainants. In response, the State argues only part of this complaint is preserved. According to the State, Saenz never objected that Estrada was not qualified to give an expert opinion on delayed outcry.

To preserve error for appellate review, the complaining party must make a timely and specific objection at the earliest opportunity. TEX. R. APP. P. 33.1(a)(1); *Acevedo v. State*, 255 S.W.3d 162, 167 (Tex. App.—San Antonio 2008, pet. ref'd). A specific objection regarding expert testimony must detail the particular deficiency in the expert's qualifications or the reliability of the expert's opinions. *Acevedo*, 255 S.W.3d at 167. Here, the record shows Saenz specifically objected to Estrada's qualifications to provide expert testimony on recantation; however, the record shows no similar objection was made as to Estrada's qualifications to provide expert testimony on delayed outcry. In fact, by the time Saenz objected to Estrada's qualifications, Estrada had already testified on delayed outcry.

No rigid formula exists to evaluate whether a particular witness qualifies as an expert. *Matson v. State*, 819 S.W.2d 839, 851 n.10 (Tex. Crim. App. 1991). A witness may be qualified by reason of knowledge, skill, experience, or training, regardless of its source. *Id*. Here, Estrada testified she held a master's degree in psychology from Our Lady of the Lake University. To earn this degree,

Estrada took courses in child development and abnormal psychology. Estrada's practical experience consisted of twenty-three years with the San Antonio Police Department, including almost three years in the sex crimes unit of the San Antonio Police Department. Estrada testified that even though she had been moved to another unit she continued to work on some sex crimes cases. Estrada testified she had encountered numerous complainants who made delayed outcries or who recanted allegations of sexual abuse. Estrada also testified she had read articles and studies on delayed outcry and recantation by child sexual assault complainants.

The record shows that even if Saenz had objected to Estrada's qualifications to provide expert testimony on delayed outcry, the trial court could have properly allowed this testimony. Based on this record, we hold the trial court's decision to allow Estrada's testimony on delayed outcry and recantation was not an abuse of discretion. Saenz's fourth issue is overruled.

### 2. Testimony of Dr. Nancy Kellogg

In his fifth issue, Saenz argues the trial court erred in allowing the testimony of Dr. Nancy Kellogg, professor of pediatrics at the University of Texas Health Science Center, San Antonio. Saenz does not challenge Kellogg's qualifications to provide expert opinions in child sexual abuse cases. Instead, Saenz argues the trial court abused its discretion in allowing Kellogg's testimony because Kellogg "[w]ithout speaking to the complainants" "had incomplete data on which to base her expert opinions." Saenz further argues Kellogg "did not—and could not—tie the facts of the case to the scientific principles that she testified about." Thus, Saenz essentially argues that because Kellogg never interviewed Y.S., she could not have tied the facts of the case to the scientific principles about which she testified.

Here, the record shows Saenz specifically objected to Kellogg's testimony based on the expert's failure to talk to or examine Y.S.; however, Saenz did not specifically object to Kellogg's testimony because of the expert's alleged failure to tie the facts of the case to the scientific principles about which she testified.[2] Moreover, the record shows that by the time Kellogg testified, the trial court had heard Y.S.'s testimony. Y.S. testified she did not disclose the sexual abuse to anyone until she was an adult and living on her own. Y.S. further testified that when she finally disclosed the sexual abuse to her mother, her mother and Saenz were experiencing marital difficulties, and her mother was emotionally supportive of her and facilitated her reporting the sexual abuse to the police.

For authority, Saenz relies on *Acevedo*, a case in which we held the trial court abused its discretion in admitting expert testimony on the effects crystal methamphetamine had on the defendant. 255 S.W.3d at 169. In *Acevedo*, the record showed the expert, a psychiatrist and pharmacist, possessed no information whatsoever about the particular facts of the case; the expert had no information about the defendant's individual characteristics, previous drug use, drug tolerance, how much of the drug was ingested, when the drug was ingested, and what other substances were ingested. *Id*. Under these circumstances, we concluded the expert's testimony was speculative, and therefore, unreliable and irrelevant. *Id*. at 169-70.

Here, by contrast, Kellogg testified she reviewed numerous documents prior to forming her expert opinion in this case, including statements made by Y.S. and S.S., statements made by their mother, and the transcripts of Y.S.'s and S.S.'s testimony from the first trial. Additionally, Kellogg's

---

[2] Defense counsel stated, "I'm going to object again, Judge, we've had this before, but I'll have to continue to object. When we're making specific opinions on somebody she's never met, never talked to, never done an examination, never gotten the history that she's talked about just a minute ago, from her. I'm going to have to object that we're going far beyond any medical diagnosis or standard medical diagnosis that a doctor should be entitled to give."

testimony shows she had a thorough understanding of the particular facts of this case, including a familiarity with Y.S.'s delayed disclosure of the sexual abuse, the progression of abuse alleged by Y.S., and the circumstances of S.S.'s outcry and her recantation. We, therefore, are of the opinion that the trial court could have reasonably concluded that Kellogg had sufficient facts and data upon which to base her opinions. *See Griffith v. State*, 983 S.W.2d 282, 288 (Tex. Crim. App. 1998) (holding the trial court did not abuse its discretion in admitting expert testimony when expert told the jury he reviewed the investigative reports, crime scene photos, autopsy photos, witness statements, and the defendant's school and personnel records before developing an opinion about the defendant's future dangerousness).

Additionally, we are of the opinion that even if Saenz had objected to Kellogg's testimony based on her alleged failure to tie the facts of this case to scientific principles, the trial court could have properly overruled this objection. Based on the documents she reviewed, Kellogg stated she would give Y.S. a medical diagnosis of sexual abuse. Kellogg testified her opinion was based on the detail Y.S. provided about what happened, which was "very rich and consistent." Kellogg also stated her opinion was based on the circumstances of Y.S.'s disclosure, when Y.S. finally told someone about the abuse, when she reported the situation, the family's response, and how the family's response affected Y.S. Kellogg opined that all of these factors were consistent with what she had seen in other children and adolescents she evaluated for sexual abuse. Kellogg went on to testify that children typically disclose sexual abuse when they cannot take it anymore or when they feel safe. Here, Kellogg said it was her understanding that Y.S. had separated herself from her home by the time she disclosed the sexual abuse, and she was beginning to deal with the issues and emotional problems caused by the sexual abuse. Kellogg indicated that children, adolescents, and even adult

victims of sexual abuse delay disclosure for a lot of reasons. Kellogg went on to say that most victims delayed disclosure because they were afraid of what would happen when they did. In particular, Kellogg noted that when sexual abuse occurred in a family situation, the victims feared disclosure would break up the family and cause a lot of turmoil. After reviewing the record, we conclude Kellogg was able to tie the facts of this case to her expert opinion testimony.

We hold the trial court's decision to admit Kellogg's testimony was not an abuse of discretion. Saenz's fifth issue is overruled.

## CONCLUSION

The judgments of the trial court are affirmed.

DO NOT PUBLISH