NO. 07-02-0010-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 27, 2004

_____

JOHN IRVIN PREWITT,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 163RD DISTRICT COURT OF ORANGE COUNTY;

NO. B-000350-R; HON. DENNIS POWELL, PRESIDING

_____

***Opinion***

_____

Before QUINN, REAVIS and CAMPBELL, JJ.

Appellant, John Irvin Prewitt, argues in three issues that his conviction for murder should be reversed. The first issue concerns whether the trial court erred in admitting evidence of extraneous offenses. The second involves the trial court's decision which overruled his objections to voir dire questions posed by the State, while the third encompasses the issue of lesser-included offenses and the trial court's refusal to submit those requested by appellant. We affirm the judgment.

### Background

Appellant was a friend of Mark Jimijo Neese (Neese) and bought drugs from him to resell to others. However, he allegedly became angry with Neese over a stolen car Neese had sold him. Other evidence suggests that he also wanted to take over Neese's drug operation.

During a trip to Houston on August 22, 1999, appellant and his friends Shad Brown (Brown) (the son of Neese's girlfriend) and Billy McIntosh discussed killing Neese by luring him to a lake. Once at the lake, they would shoot him. That evening, and after inducing Neese to meet them later, appellant, Brown, McIntosh and David Venable gathered at the lake. Appellant had a gun which was going to be used as the murder weapon. So too had he made a silencer for it. Furthermore, Brown phoned Neese from time to time to ascertain when he would arrive. Before Neese did, however, appellant left. Eventually, Neese did arrive, and he was shot and stabbed by the other men. Thereafter, they weighed down his body, dumped it in the lake, and took money from his truck.

The next morning, appellant joined the group and helped clean the boat used to dispose of the body. He also assisted in leaving Neese's truck in the parking lot of a shopping mall and received a share of the stolen money. Approximately a week later, Neese's body surfaced and was discovered by a fisherman in the lake.

After hearing stories that Brown was talking about the murder, the police obtained a confession from him. The information he imparted led to the recovery of the silencer. Moreover, appellant's fingerprints were discovered on tape wrapped around the item.

Eventually, appellant gave a statement to the police. He admitted to providing the gun and the silencer.

2

### *Issue Three – Lesser-Included Offenses*

In his third and last issue, which we opt to consider first, appellant contends that the trial court erred in refusing to grant his request to include in the charge various lesser-included offenses. The latter consisted of an instruction on manslaughter, criminally negligent homicide, and deadly conduct. We overrule the issue.

Assuming *arguendo* that the crimes encompassed by the requested instructions were lesser-included offenses of murder, the complainant must still show that evidence appeared of record permitting a jury to rationally find that appellant committed only the lesser offenses. *Schweinle v. State,* 915 S.W.2d 17, 18 (Tex. Crim. App. 1996); *Gilchrest v. State*, 904 S.W.2d 935, 940 (Tex. App.–Amarillo 1995, no pet.). Here, appellant alleges that such evidence appeared in his written statement to the police. The specific comments to which he alludes follow:

> When this started out – when this started, I thought it was for threats to [Neese], and I did not intend for him to die or to be hurt. I liked Jim, and I am sorry he was killed. If I would have – if I had known it would have come to this, I would have called Jim and warned him.

By the time the foregoing utterance was made, appellant had also admitted (in his statement) to 1) being present while the group discussed shooting Neese, 2) knowing that Rick Massey was attempting to find a gun with which to shoot Neese, 3) telling Massey to use one of his (Massey's) own guns, 4) retrieving his (appellant's) own gun and handing it to David Venable when Massey directed him to do so, 5) later obtaining a silencer he (appellant) built to use with the weapon he delivered to Venable, 6) witnessing Brown and Venable install the silencer on the weapon he obtained, 7) knowing that the weapon was "about half loaded," 8) hearing others discuss how to dispose of Neese's body, 9) hearing

3

that Neese would arrive at the lake "before midnight," and 10) leaving since he "did not want to be around *during the shooting.*" (Emphasis supplied). Thus, from the context of the utterance cited by appellant, we see that by the time he left for the evening he knew of the intended shooting and provided the weapon to be used. *See Means v. State*, 955 S.W.2d 686, 692-93 (Tex. App.–Amarillo 1997, pet. ref'd untimely filed) (holding that a defendant cannot dissect a record for words which may be rendered ambiguous when taken from their context but rather evidence purportedly entitling a defendant to a lesser-included offense must be viewed within its context). This is pivotal because what he may have thought or intended when the group "started out" does not negate the effect of his actions and knowledge when he departed the scene. Again, the State accused and tried appellant as a party to the murder, and by the time he left the lake, appellant had developed the requisite intent and committed the requisite acts to inculpate him as such. *See* Tex. Pen. Code Ann. §7.02(a)(2) (Vernon 2003) (defining a party as one who solicits, encourages, directs, aids, or attempts to aid another person to commit the offense while acting with the intent to promote or assist in the commission of the offense). In short, because the tenor of the evidence at the time the murder occurred controls, *see Solomon v. State*, 49 S.W.3d 356, 369 (Tex. Crim. App. 2001) (stating that whether the defendant intended to kill the victim before the robbery took place matters not if the relevant liability elements were established at the time the crime occurred), *Gilchrest v. State*, 904 S.W.2d at 940 (stating that "the evidence at the moment of the attack and immediate departure was all controlling"), and because by that time appellant had already secured the murder weapon for Massey while knowing its intended use, whatever thoughts he may have

4

originally had about merely threatening Neese were of no probative value *viz* his entitlement to an instruction on a lesser offense.

Nor can we say that the comment about his warning Neese if he "had known it would have come to this" is of any consequence. This is so for several reasons. First, we have no idea about what he meant when he used the word "this." The word could equally refer to the murder of Neese, the fact of his arrest for that murder and the realization of the potentially onerous nature of the accompanying ramifications, or the fact that he may have felt remorse. And, because it could be any of those three things, if not others, then we must conclude that the comment lacks probative value of anything. *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex. 1997) (holding that evidence which can reasonably be construed in two different and opposing ways is not evidence of anything). Second, when placed in context, the utterance can hardly be interpreted as evidence illustrating a want of knowledge about the purported shooting or intent to aid in that endeavor. Again, before uttering it, appellant had already admitted to acquiring the gun and silencer. And that he knew of their intended use is both clearly and indisputably exemplified by his statement that he left the scene since he "did not want to be around during the shooting." Logic would not permit a juror to rationally conclude that appellant was unaware of the intended shooting given that he left because he did not want to be at the shooting. Consequently, the passage at issue could only refer to his subsequent arrest, his subsequent feelings of remorse, or something else, none of which negate his liability as a party.

5

In sum, the evidence alluded to by appellant does not negate one or more elements of his responsibility as a party for the greater offense of murder. Thus, it would not permit a jury to rationally conclude that if he was guilty, it would be of only a lesser offense.

### *Issue One - Extraneous Offenses*

We next consider appellant's first issue. Therein, he complains about the trial court's admission of evidence regarding extraneous offenses. Purportedly, it was irrelevant, its undue prejudice outweighed its probative value, and he was not accorded sufficient prior notice of the State's intent to use the evidence.[1] Though he appears to suggest that the extraneous offenses involved were many, the record excerpts he mentions allude only to two examples. They pertained to comments by two witnesses about appellant buying drugs from Neese and selling drugs to others. And, because it is not our obligation to peruse through the record in search of instances where evidence of other extraneous offenses may have been admitted, we limit our consideration of appellant's complaint to the instances mentioned above. So too do we overrule the issue.

As to the matter of prior notice, Texas Rule of Evidence 404(b) does obligate the prosecutor to afford a defendant reasonable notice of its intent to introduce evidence of other crimes, wrongs, and bad acts during its case in chief. This, of course, assumes that the defendant requests notification; should he not, then there is no duty to notify. *Henderson v. State,* 29 S.W.3d 616, 624 (Tex. App.–Houston [1st Dist.] 2000, pet. ref'd) (holding that the requirement of notice applies only if the defendant makes a timely request to the State); *Webber v. State,* 21 S.W.3d 726, 728 n.1 (Tex. App.–Austin 2000, pet. ref'd)

---

[1]Appellant does not argue that the State failed to disclose its intent to use the evidence. He merely contends that the disclosure by the State was not sufficiently specific.

(holding that the record failed to show the defendant requested notice of intent to offer bad acts into evidence). Here, we have failed to find in the record a request by appellant for notice of extraneous offenses, and he has failed to direct us to any such notice. Therefore, we cannot say that the State was under a duty to comply with Rule 404(b).

Furthermore, even if a request was made, we would have to reject appellant's complaint given its tenor. That is, appellant contends that the State failed to comply with Rule 404(b) because the notice did not mention any "specific bad act." Here, the State included the following in its "Third Supplemental Discovery Compliance": "Defendant used and possessed illegal narcotics, including cocaine and marihuana. Defendant would also buy and sell those illegal narcotics." Next, the testimony mentioned in his brief and about which he now complains encompassed one witness stating that appellant bought drugs from Neese and another saying that appellant sold drugs to her. No specific transactions were mentioned in either excerpt. By juxtaposing the testimony of the two witnesses with the notice afforded by the State, one can reasonably conclude that the generality of the State's disclosure comported with the generality of the testimony about which he complains. Given this comparability and the generality inherent in the testimony at issue, we reject the assertion that to be reasonable, the notice contemplated under Rule 404(b) had to include information about *specific* acts or transactions.

As to the relevance of the evidence, we note that it provided a link in the chain of motive. Simply put, the State endeavored to prove that appellant participated in the murder to enhance his position in the drug trade. That is, he sought to take over the trade routes being serviced by Neese. And, while motive may not be an element of murder, it nonetheless reflects upon the *mens rea* of appellant as a party to murder. In other words,

7

the evidence provides support for the proposition that appellant aided in the murder of Neese while acting with the intent to promote or assist in the murder. So, that appellant bought and sold drugs was indeed relevant. *See* TEX. R. EVID. 404(b) (stating that evidence of other crimes, wrongs, and acts is not admissible to prove the character of a person in order to show action in conformity therewith, but may be admitted for other purposes such as motive, preparation, plan or intent).

As to the prejudicial effect of the evidence substantially outweighing its probative value, *see* TEX. R. EVID. 403 (stating that evidence, although relevant, may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."), we cannot say that evidence of appellant's drug dealing took an inordinate amount of time to develop, given the totality of the evidence presented. So, it had little likelihood of distracting the jurors from assessing appellant's culpability for the indicted offense. Indeed, given its tendency to prove motive and intent, one could reasonably conclude that it actually served to focus the jury's attention on the underlying crime and why it occurred. And though conviction was not utterly dependent upon its presentation to the jury (given the testimony of Shad Brown and the statement of appellant inculpating himself), it nonetheless helped place the murder within a framework easily understandable to the jury, *i.e.* that appellant wanted Neese killed so he could take over. Given this, we cannot say that the trial court's decision to admit the evidence despite appellant's Rule 403 objection fell outside the zone of reasonable disagreement and, thereby, evinced an abuse of discretion. *See Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1991) (stating that whether the trial court erred in admitting evidence depends upon whether its decision fell

8

outside the zone of reasonable disagreement and, therefore, constituted an abuse of discretion).

Next, and assuming *arguendo* that the trial court did err in admitting the evidence, we would nevertheless find that the error did not affect any substantial right of the appellant. *See* TEX. R. APP. P. 44.2(b) (stating that any non-constitutional error must be disregarded unless it affects substantial rights); *see Avila v. State*, 18 S.W.3d 736, 741-42 (Tex. App.–San Antonio 2000, no pet.) (noting that the erroneous admission of evidence of extraneous offenses was not constitutional error). As discussed under the foregoing issue, appellant was tried for being a party to murder. And, to the extent that the topics of drugs and appellant's involvement therewith were developed, such evidence was relevant to the issue of motive. At the very least, it, coupled with other evidence, tended to illustrate a desire to eradicate Neese so he (appellant) could advance in the trade. Thus, there existed a legitimate purpose underlying the State's effort to admit it, and the State was not using the evidence simply as a way to invoke emotional reaction by the jury. *See Motilla v. State*, 78 S.W.3d 352, 357-58 (Tex. Crim. App. 2002) (stating that when addressing harm, the appellate court should consider, among other things, the character of the alleged error and how it might be considered in connection with the other evidence).

More importantly, appellant himself acknowledged in his brief that the testimony of Shad Brown "was more then [sic] sufficient to establish the elements of the offense charged," *i.e.* a party to murder. With that we cannot disagree. Brown amply described how appellant not only helped plan the killing but also secured the weaponry to be used to effectuate it, as did appellant himself. Consequently, the evidence of appellant's guilt as a party to murder was and is more than overwhelming. *See Motilla v. State*, 78 S.W.3d at

9

358 (stating that the evidence of defendant's guilt is a factor to consider in assessing harm).

Furthermore, the punishment assessed was 35 years imprisonment. His conviction for murder, the latter being a felony of the first degree, TEX. PEN. CODE ANN. §19.02(c) (Vernon 2003), could have resulted in a sentence of 99 years or life. *Id.* §12.32(a). Thus, appellant having received a term well below the maximum allowable hardly suggests that the evidence of his drug involvement influenced the amount of punishment levied, especially given the extent of his involvement in the premeditated murder.

In sum, and upon reviewing the entire record, we cannot say that admission of the evidence in question had a substantial and injurious effect or influence on the verdict of guilt or punishment assessed. *See Hurrelbrink v. State*, 46 S.W.3d 350, 356-57 (Tex. App.–Amarillo 2001, pet. ref'd) (stating that a substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict). So, even if it was error to admit it, the mistake was harmless.

### *Issue Two - Voir Dire Question*

Via his second issue, appellant complains that the trial court erred in overruling his objections to the State's voir dire question which attempted to commit the prospective jurors to a specific set of facts. We overrule the issue.

The two instances to which appellant objected are:

[Prosecutor]: . . . Let me just - - Ms. Ashmore, if you found out, hey, there was a real good reason that made a lot of sense that you could kind of empathize with, like, hey, this guy sold drugs to this man's kids, you know, ten-year-old, twelve-year-old - - doesn't really matter. You know, maybe he shouldn't have done it, but you can sure see where he came from, right?

10

Now would that be the same as, though - - I'm going to use you now, Mr. Le[B]lanc. I apologize. Say Mr. LeBlanc just wanted a piece of the action, wanted the money, wanted what the drug dealer had, wanted to take over the deal. Do you see a difference there?

[Veniremember]: (No response).

[Prosecutor]: I hope you do. If you don't, tell me.

[Defense Counsel]: I will object to that. That's an intent to commit the juror - - perspective [sic] juror to a specific fact circumstance.

The Court: Overruled.

*   *   *

[Prosecutor]: Let me see if I can go about it this way: Mr. Procella, as I said, is the brains of the operation. Mr. Procella, let's just say, for the purposes of this hypothetical or this example, doesn't even drive the get away car. Let's just say he never even sets foot out of his house, but we meet at his house. He sets it all up. He does the research. He goes down to the bank a few times. He cases the place. He takes a few surveillance photos when they're not looking. He finds out where the cameras are in the bank. He sits down, diagrams the bank, does a little floor plan, and sits down with it and tells me and Ms. Robichaux how we need to go about this and who the younger teller is and who we need to target and all that.

All right. He has encouraged us. He has aided us. He has helped us commit this offense, yet he has never set foot outside his house. Under that fact situation, who would agree that he is still, nonetheless, a party to this bank robbery offense that Ms. Robichaux and I commit?

[Defense Counsel]: Your Honor, we now renew our objection. That is a specific question, and it's meant to commit the perspective [sic] jurors to a specific fact circumstance. It's an improper hypothetical, also.

The Court: Okay. Overruled.

Next, authority prevents an attorney from committing a prospective juror to a verdict based on a set of hypothetical facts. *Allridge v. State,* 850 S.W.2d 471, 480 (Tex. Crim. App. 1991), *cert. denied,* 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). Furthermore, a question is of that ilk if it solicits a venireman to resolve or refrain from

11

resolving an issue on the basis of one or more facts contained in the question. *Standefer v. State,* 59 S.W.3d 177, 180 (Tex. Crim. App. 2001). However, one must remember that jurors may be asked whether they can follow a particular, relevant law. *Id.* at 181. And, litigants can pose questions to assess whether any potential juror would be unable to do so. So, care must be taken in constructing a hypothetical that legitimately delves into the possibility of disclosing basis upon which to challenge a juror while avoiding the inclusion of facts unnecessary for that purpose. *Id.* at 182. With this said, we turn to the questions before us.

With respect to the first, the State was explaining the effect of motive. While doing so, it asked if the jurors discerned some difference between a situation wherein the motive was to seek revenge for the victim having sold drugs to the defendant's children and wherein the motive was to take over the victim's drug business. The State did not ask the jurors whether they would resolve or refrain from resolving an issue based on those facts. Therefore, we cannot say that the State was asking for a commitment or that the trial court abused its discretion in overruling appellant's objection to the question.

With respect to the second situation, the State was attempting to explain the law of parties. Furthermore, the question did ask the venire members to resolve an issue based upon a set of hypothetical facts. Thus, it could be said that the query sought a commitment from them. Nevertheless, the State may rely on the law of parties to secure a conviction, and potential jurors are challengeable for cause based upon an inability to abide by that legal concept. *Nichols v. State,* 754 S.W.2d 185, 197 (Tex. Crim. App. 1988), *cert. denied,* 488 U.S. 1019, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989), *overruled on other grounds by Butler v. State,* 803 S.W.2d 125 (Tex. Crim. App. 1992). Therefore, the question was

12

proper if it did not contain facts other than those necessary to establish the challenge for cause. And, in that regard, appellant never informs us of the facts which he considers to be unnecessary.

Yet, assuming that the question does contain irrelevant hypothetical facts, we would nonetheless find the error harmless. *See Paustian v. State,* 992 S.W.2d 625, 628 (Tex. App.–El Paso 1999, pet. ref'd) (applying Texas Rule of Appellate Procedure 44.2(b) to determine the harm resulting from a litigant attempting to improperly commit a juror to a hypothetical and finding that the appellant was harmed). Unlike the situation in *Paustian*, the State here did not ask each member of the venire to respond to the hypothetical. Thus, it was less likely to become ingrained within the minds of the veniremen through repetition. Additionally, the facts in the hypothetical posed by the State were utterly distinct from those which were to be used to establish appellant's culpability for murder. Nor was the State posing a hypothetical that effectively relieved the potential jurors from having to find the existence of a particular element of the crime, again, unlike the situation in *Paustian*. And, as to the relevance of the question, the State sought to determine whether anyone on the venire disagreed with the law authorizing conviction as a principal though the defendant may only have been a party. That was a permissible topic to cover, as noted above. Moreover, by the time the hypothetical was posed, the State had already asked a similar "robbery" question to the panel (wherein the prosecutor acted as the party). Appellant objected neither to it nor a venireman's answer to it. Thus, exposure to the supposed taint arising from the hypothetical now at issue already occurred without any complaint by the appellant. Next, the question about which appellant complains was asked during the first half of the State's rather long voir dire. Thus, the timing of the hypothetical was not such

13

as to allow the venire member to mentally linger on the subject.  These indicia coupled with those considered under issue two which weighed against a finding of harm are determinative.  Assuming that the question asked was improper, we conclude that it had little to no influence or effect upon the verdict rendered or punishment levied.

Having overruled each issue, we affirm the judgment of the trial court.


Brian Quinn
Justice


Publish.