NO. 07-03-0550-CR


NO. 07-03-0551-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JUNE 14, 2004



______________________________




SAMUEL BARTHOLOMEW SMIDDY, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;



NO. 12,263-B & 13,873-B; HONORABLE JOHN BOARD, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

ABATEMENT AND REMAND


 Following the trial court's judgments adjudicating his guilt for burglary of a building
and aggravated assault, appellant Samuel Bartholomew Smiddy perfected these appeals. 
The clerk's records were filed on March 26, 2004. After the court reporter filed extensions
of time in which to file the records indicating that no written designation or arrangement to
pay had been made, by letter dated May 13, 2004, this Court granted an extension until
June 10, 2004. By that same letter, attorney Hayward M. Rigano was directed to file a
written certification with this Court by June 1, 2004, indicating whether he had complied
with the Rules of Appellate Procedure and if not, a reasonable explanation for non-compliance. Counsel did not respond and the reporter's records have not been filed. A
review of the clerk's records demonstrates that on August 7, 2003, attorney George
Harwood was appointed to represent appellant. However, a month later the trial court
granted a motion to substitute Rigano as appellant's counsel.

 Therefore, we now abate these appeals, and remand the causes to the trial court
for further proceedings. See Tex. R. App. P. 37.3(a)(2). Upon remand, the trial court shall
immediately cause notice of a hearing to be given and, thereafter, conduct a hearing to
determine the following: 

 1. whether appellant desires to prosecute these appeals;

 2. whether appellant is indigent and entitled to appointed counsel; and

 3. why appellant is being deprived of reporter's records.


The trial court shall cause a hearing to be transcribed. Should it be determined that
appellant does want to continue these appeals and is indigent, then the trial court shall also
take such measures as may be necessary to assure appellant effective assistance of
counsel, which measures may include the appointment of counsel. If new counsel is
appointed, the name, address, telephone number, and state bar number of said counsel
shall be included in the order appointing new counsel. Finally, the trial court shall execute
findings of fact, conclusions of law, and such orders as the court may enter regarding the
aforementioned issues and cause its findings and conclusions to be included in 
supplemental clerk's records. The supplemental records of the hearing shall also be
included in the appellate records. Finally, the trial court shall file the supplemental clerk's
records and the supplemental reporter's records with the Clerk of this Court by Monday,
July 26, 2004.

 It is so ordered.


 Per Curiam


Do not publish.



rim. App. 1978) (recognizing that it can be). Yet, as stated above, there also must
be evidence of record affirmatively showing that appellant burglarized only a building as
opposed to a habitation before establishing his entitlement to the instruction in question. 
And, according to appellant, that data consisted of "no evidence of live utilities, no person
living in [the house] at the time in question and no furnishings, bedding or other items
common to overnight accommodations." (1) One cannot dispute that these indicia are
pertinent in determining whether a structure constitutes a building as opposed to a
habitation. (2) They are some of a group worthy of consideration. Indeed, our Court of
Criminal Appeals directed that an amalgam of indicia be assessed such as 1) whether the
facility was being used as a residence at the time of the offense, 2) whether it contained
bedding, furniture, utilities, or other belongings common to a residence, and 3) whether it
was of a character "that it was probably intended to accommodate persons overnight . . .
." Blankenship v. State, 780 S.W.2d 198, 209 (Tex. Crim. App. 1989). (3) While "[a]ll of
these factors are relevant," "none are essential or necessarily dispositive," according to the
court. Id. And, therein lies the resolution to the dispute before us. 

 It may be that the home was vacant and lacked furnishings. Yet, that alone did not
render the abode something other than "a structure or vehicle that is adapted for the
overnight accommodation of persons." Tex. Pen. Code Ann. §30.01(a) (Vernon 2003) (so
defining a habitation). Again, no indicia is essential or necessarily dispositive. Blankenship
v. State, 780 S.W.2d at 209; see In re E.P., 963 S.W.2d 191, 193 (Tex. App.-Austin 1998,
no pet.) (holding that the apartment was not a building simply because it was vacant, given
the other indicia present). Furthermore, no other evidence appears of record suggesting
that the structure lacked the status as a habitation. Rather, the evidence addressing
whether the abode was used as a residence or had a character illustrating that it was
probably intended to accommodate people overnight depicted the structure to be a
habitation rather than a building. For instance, the owner considered the place as a house
like other houses in Lubbock, and it was "meant to be lived in." Not only was it wired for
electricity but also plumbed for water and gas. So too did it have a kitchen, bathroom,
water heater, heater, and roof. These indicia are akin to those in Blankenship and,
according to that court, sufficed to establish the locale was a habitation. Additionally,
though it may have been vacant, the house was in the process of being re-leased. 

 Consideration of all the Blankenship criteria seems only imperative in a situation like
that before us. This is so because evidence cannot be taken out of context to determine
an appellant's entitlement to an instruction on a lesser-included offense. Prewitt v. State,
133 S.W.3d 860, 863 (Tex. App.-Amarillo 2004, pet. ref'd). So, given the directive in
Blankenship that no one factor is essential or necessarily dispositive, we can only but
conclude that the relevant context for purposes of assessing whether a structure is a
building or a habitation is the totality of the Blankenship criteria. In other words, it is not
enough to simply pluck one indicia and use it as basis for justifying the submission of the
charge sought by appellant here. Instead, the issue calls for all to be addressed. 

 Simply put, the minimal evidence cited by appellant (even if accepted as true) did
not alone permit a rational factfinder to conclude that if he burglarized anything it was only
a building and not a habitation. The abode could be vacant and without furnishings and
still be a habitation. See Hunt v. State, No. 13-01-0243-CR, 2002 Tex. App. Lexis 2780
at *11-12 (Tex. App.-Corpus Christi April 18, 2002, no pet.) (not designated for publication)
(holding that the appellant was not entitled to an instruction on the lesser-included offense
of burglarizing a building even though he believed the house was abandoned, the owner
had not occupied it for several months given its need for repair, at least one room within
it was empty, and portions of it were boarded); Mathes v. State, No. 14-93-0311-CR, 1995
Tex. App. Lexis 2180 at *3-5 (Tex. App.-Houston [14th Dist.] September 7, 1995, no pet.)
(not designated for publication) (holding that the appellant was not entitled to the
instruction although the house apparently was vacant at the time of but had been lived in
one year before the burglary). 

 Issue Two - Mistrial

 Next, appellant contends that the trial court erred in not granting him a mistrial 
during the punishment phase of the trial due to the admission of evidence (drugs)
purportedly obtained through illegal means. We overrule the issue for two reasons.

 First, the record discloses that appellant withheld all objection to the evidence until
the State finished its examination of the witness through which the evidence was proffered. 
By that time, the State not only illustrated how the evidence was obtained but also of what
it consisted. Appellant attempts to justify the delay by contending that he did not know of
the evidence's inadmissibility until he questioned the witness on voir dire. At that time, he
purportedly discovered that the reason for the stop mentioned by the officer in his written
report (i.e. traffic violation) differed from that uttered at trial (i.e. witnessing what he
believed to be a narcotics transaction). Yet, one need only read the record to discover that
the purported difference became apparent early in the officer's testimony and long before
he described the fruits of his search. For instance, the reasons given by the officer at trial
to justify the stop were propounded in response to the 19th question asked by the State
during its direct examination of the witness. Assuming that appellant had the officer's
written report (as appellant informed the court that he did), then he was in a position to
compare that response with the contents of the report. At that point the difference could
have been uncovered, and effort could have been made to develop the matter and exclude
the testimony. Instead, appellant remained silent and allowed the State to propound an
additional 40 plus questions about the event and the contraband discovered. Only after
the prosecutor had passed the witness to appellant for cross-examination did the appellant
request leave to interrogate the witness outside the jury's presence. By that time, the jury
had heard (without objection) all that which appellant hoped to exclude. Given the delay
of appellant when the potential grounds for objection had become apparent much earlier,
he cannot be heard to complain about the trial court's refusal to grant him a mistrial. (4) 
Routier v. State, 112 S.W.3d 554, 575 (Tex. Crim. App. 2003) (holding that unless an
objection is uttered at the earliest opportunity, it is waived).

 Second, the record also reveals that the trial court directed the jurors to disregard
the evidence in question immediately before the litigants began their summations. 
Authority requires us to presume that they heeded the admonishment. Gardner v. State,
730 S.W.2d 675, 696 (Tex. Crim. App. 1987). Moreover, we find no reason to deviate from
that rule especially since the evidence in question was redundant of other crimes (e.g.,
three prior felony convictions for the possession or delivery of controlled substances)
committed by appellant and admitted to at trial.

 The judgment is affirmed.


 Brian Quinn

 Chief Justice

Publish. 
1. The representation that the abode lacked "live utilities" is unfounded. The home was wired for
electricity and no one testified that it had been disconnected or was otherwise inoperative. Nor did anyone
state that the gas or water had been disconnected. At best, it appeared that the gas to the heater had been
turned off temporarily. That problem was remedied by a plumber, however, and it "really didn't affect the hot
water heater or anything else." 
2. Statute defines a habitation "as a structure or vehicle that is adapted for the overnight
accommodation of persons . . . ." Tex. Pen. Code Ann. §30.01(a) (Vernon 2003). In turn, a building is "any
enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture,
ornament, or use." Id. §30.01(2).
3. The issue in Blankenship differed from that involved here. We are concerned with whether the
evidence entitled appellant to an instruction on a lesser-included offense. In Blankenship, the court was
concerned with whether legally sufficient evidence supported the jury's verdict. And, while resolution of each
may depend upon the definitions attributed to the words habitation and building, the tests to be applied differ. 
 
4. The record also reveals that the trial court deemed the objection untimely.