

NUMBER 13-13-00359-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**DONNA TAYLOR,**                                                            **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                       **Appellee.**

On appeal from the 117th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Benavides**
**Memorandum Opinion by Justice Benavides**

On May 9, 2013, a Nueces County jury convicted appellant, Donna Taylor, for the

murder of Floyd Scroggin, sentenced her to twenty years in prison, and assessed a

$5,000 fine. *See* TEX. PENAL CODE ANN. § 19.02(b) (West, Westlaw through 2013 3d

C.S.). Taylor raises three issues on appeal: (1) the trial court abused its discretion by

admitting evidence of methamphetamine found at the scene of the crime; (2) the trial court erred by denying her motion for directed verdict because the facts were legally insufficient to sustain a murder conviction; and (3) the trial court improperly instructed the jury to convict Taylor with proof other than proof beyond a reasonable doubt. We affirm.

## I. BACKGROUND

On January 16, 2013, William and Sandy Schroeder responded to Taylor's cries for help in a mobile home trailer park at 548 Stingray Street in Flour Bluff. When the Schroeders arrived at Taylor's mobile home, they discovered Floyd Scroggin's fatally wounded body. Sandy testified that Taylor was at the scene and stated, "I shot him. It was an accident." Under cross-examination, Sandy testified that Taylor said she was "shaking her purse and [the gun] went off." Wayne Zosche, supervisor of the trailer park where the shooting occurred, stated that upon arrival at the scene, other residents told him that an accident had taken place and somebody was shot. However, inside Scroggin's trailer, Zosche heard Taylor say, "He's been shot" and "I shot him." Paramedic Billy Ross testified that when he arrived at the scene, Taylor ran up to him saying, "He's been shot. It was an accident."

Police Officers Donna Dean Mays and John Schultz, with the Corpus Christi Police Department, testified as follows:

> Taylor and Scroggin had been arguing over some keys and he was looking for the keys, but they couldn't find the keys. She dumped her purse out to prove that she didn't have the keys and the pistol fell out of her purse and hit the ground and went off.

Mays found the pistol on a bed in the adjoining bedroom. Lead Detective Richard Garcia was given information that Taylor "shook the purse" and the gun discharged inside the

purse.   Detective Garcia testified that he found no bullet holes in Taylor's purse.   During Detective Garcia's testimony, the jury watched a video recording of Taylor's statements to police officers describing the night of Scroggin's death.

Later, Corpus Christi Police Department victim's advocate Genarose Pena, who assisted Taylor at the police department, testified that she overheard Taylor's phone conversation with her sister where Taylor explained that the gun fired accidentally when she dropped her purse.   Pena testified, however, that Taylor's version of the story changed when she recounted her story to Detective Garcia:

> [State]:   How is it different than her first version?
>
> [Pena]:   Initially she said the gun was inside of her purse, the gun fell and the gun went off, that was her initial version.   And then within that—
>
> Q.   And now at this point, what has it changed to?
>
> A.   That she was holding the gun and the gun just went off.   At that point again she stated the gun —that the gun just went off.

At the scene, Pena found contents of a purse on the floor and on an ottoman.

David Curtis, a firearms expert for the Corpus Christi Police Department, administered a gunshot residue test on Taylor's hand.   It revealed Taylor may have discharged a firearm, handled a discharged firearm, or been in close proximity to a discharging firearm.   His report included a comment that read:   "Subject says firearm discharged after being dropped, then said [it] discharged in her hand."   Further, he testified that this particular pistol was harder to fire because the axle was bent.   He reported that when he drop-tested the pistol twenty-four times from different positions, "at no time did the firearm discharge."

The jury found Taylor guilty of murder. The trial court sentenced Taylor to twenty years' imprisonment in the Texas Department of Criminal Justice Institutional Division and assessed a fine of $5,000. This appeal followed.

## II.     ADMISSION OF EVIDENCE

Taylor first argues that the trial court abused its discretion by improperly admitting methamphetamine evidence found at scene that should have been excluded under Rules 401, 402, 403(b), and 404 of the Texas Rules of Evidence. *See* TEX. R. EVID. 401, 402, 403(b), and 404.

### A.     Standard of Review

We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011); *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). The trial court has broad discretion in determining the admissibility of evidence, and its ruling should not be set aside absent a clear abuse of that discretion. *Butterfield v. State*, 992 S.W.2d 448, 458 (Tex. Crim. App. 1999); *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991) (en banc). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld. *Prible,* 175 S.W.3d at 731.

### B.     Procedural History

Before opening statements, the State sought permission from the trial court to admit evidence of what was alleged to be methamphetamine found at the crime scene under Rule of Evidence 404(b). *See id.* at R. 404(b). Taylor objected to the admissibility of this evidence under the same rule because the evidence did not show

4

motive or intent. *See id.* Taylor also objected to the admissibility of the methamphetamine evidence under rule 403 because the probative value did not outweigh the prejudicial effect of admitting such evidence. *See id.* at R. 403. She further objected that the methamphetamine was irrelevant to the charge of murder under rule 401. *See id.* at R. 401. The trial court admitted the evidence on the ground that it provided context as to how the shooting occurred:

> [Court]: I believe you can because it's contextual in nature. It is not an accusation, it's just that the officer is allowed to describe the scene as he found it and what they found on the scene.
>
> [State]: And again, Your Honor, the State would want to go into it as the same transaction, contextual evidence under 404(b), and it also goes as to motive and intent.
>
> [Defense]: And—
>
> [Court]: And you have something to say about that?
>
> [Defense]: Yes, Honor. I would object. I don't believe it goes to motive or intent with regards to the—
>
> [Court]: Unfortunately it's contextual in nature. An officer is allowed to describe this and the—are you asking to, in effect, ask questions as to whether this was the motive of the—of the Defendant?
>
> . . . .
>
> [Defense]: To be clear, Your Honor, I just want to preserve our—our objection with regards to the—to the mention of the drugs altogether—
>
> [Court]: Okay.
>
> [Defense]: with regards to 404(b) and with regards to—
>
> [Court]: I understand.

5

| [Defense]: | —relevancy.  And I would also object that the prej— the probative value is outweighed by the prejudicial effect— |
|---|---|
| [Court]: | Okay. |
| [Defense]: | —that arouses jury hostility and sympathy and— |
| [State]: | Okay.  Again, I think the law is very clear with regards to context—contextual—in other words, everything in the context of how this occurred.  So, yes, I will allow the finding of methamphetamines on the scene to come in. |

After admitting the evidence, the trial court ordered that no evidence would be allowed to show that Taylor was in possession of those drugs until the court determined that a valid exception to rule 404(b) applied.  While discussing the pre-admission of exhibits, the defense again objected to the admission of methamphetamine on the grounds that it was extraneous.  Both parties later stipulated to the fact that there were 6.76 grams of methamphetamine found on the ottoman chair at the scene.  Further, Taylor agreed to the introduction of the lab report showing the substance in question to be methamphetamine.  In addition, medical examiner Dr. Harminder Narula testified, without objection, that Scroggin's autopsy revealed the amount of methamphetamine found in his body was at the level of an abuser.

## C.    Discussion

### 1.  Texas Rules of Evidence 401 and 402

Taylor claims evidence of methamphetamine found at the scene was irrelevant and more prejudicial than probative under Texas Rules of Evidence 401 and 403 and therefore, inadmissible under rule 402.  In deciding whether a particular piece of evidence is relevant, a trial court judge should ask, "would a reasonable person, with

some experience in the real world[,] believe that the particular piece of evidence is helpful in determining the truth or falsity of any fact that is of consequence to the lawsuit"? *Montgomery v. State*, 810 S.W.2d 372, 376 (Tex. Crim. App. 1990) (quoting *United States v. Brashier,* 548 F.2d 1315, 1325 (9th Cir. 1976)). "Relevant evidence means having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. If the trial court believes that a reasonable juror would conclude that the proffered evidence alters the probabilities involved to any degree, relevancy is present. *Montgomery*, 810 S.W.2d at 376. Once the proponent of evidence shows it is logically relevant to some issue under Rule 401, it is admissible under Rule 402 unless the defendant demonstrates that it should be excluded because of some other provision, whether constitutional, statutory, or evidentiary. *Id.*

The jury is entitled to know all relevant surrounding facts and circumstances regarding the charged offense. *Wyatt v. State,* 23 S.W.3d 18, 25 (Tex. Crim. App. 2000). The Texas Court of Criminal Appeals has held that "it has long been the rule in this State that the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." *Moreno v. State,* 721 S.W.2d 295, 301 (Tex. Crim. App. 1986). The disputed issue at trial was whether the shooting was intentional or accidental. The evidence of methamphetamine was relevant because a jury could tend to establish a motive for Taylor's actions and could tend to rebut her claim of accidentally shooting Scroggin. *See* TEX. R. EVID. 404(b) (stating that evidence of other crimes, wrongs, and acts is not admissible to prove the character of a person in order to show action in conformity therewith, but may be admitted for other purposes such

7

as motive, preparation, plan or intent).   While motive may not be an element of murder, it nonetheless reflects upon the *mens rea* of the defendant as a party to murder.   *Prewitt v. State,* 133 S.W.3d 860 (Tex. App.—Amarillo 2004, pet. ref'd) (holding that buying and selling drugs provides a link in the chain of motive in a murder prosecution).   Moreover, we note that the testimony merely stated that drugs were found at the scene, not that Taylor was in possession of the drugs.

The trial judge is the person with the best vantage from which to decide relevancy. *Saxer v. State,* 115 S.W.3d 765, 766 (Tex. Crim. App. 2003).   We conclude that the trial court did not abuse its discretion by overruling Taylor's rule 401 and rule 402 objections regarding the admission of the methamphetamine evidence.

### 2.  Texas Rule of Evidence 403

Taylor claims that even if the trial court deemed the evidence of methamphetamine relevant, it should have been excluded under rule 403.   *See id.* at R. 403.   Relevant evidence should still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."   *Id.* The court of criminal appeals has held that a proper rule 403 analysis includes the following factors:   (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence balanced against (3) any tendency of the evidence to suggest that a decision was made on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence

8

will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

In this case, the drug evidence was relevant to determining whether the shooting was accidental or intentional. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Hayes v. State,* 85 S.W.3d 809, 815 (Tex. Crim. App. 2002). Because the issue in this case was one of accident or intent, the State urged every relevant piece of background evidence to disprove accident and prove an intentional act. In a murder prosecution, the evidence of drugs found at the scene is admissible to disprove accident because a jury is entitled to hear what occurred immediately prior to and subsequent to the commission of the act. *Albrecht v. State,* 486 S.W.2d 97, 100 (Tex. Crim. App. 1972). See Tex. Code Crim. Proc. Ann. art. 38.36 (West, Westlaw through 2013 3d C.S.).

Furthermore, evidence of methamphetamine at the scene did not have a tendency to suggest a decision based on an improper basis. *See Gigliobianco,* 210 S.W.3d at 641–42. Most of the evidence presented by the state did not involve the drugs, including Taylor's purse, which did not have a bullet hole, as well as her own inconsistent statements. Hence, we cannot conclude that evidence of methamphetamine found at the scene would have diverted the jury's attention from the central issue of whether Taylor intentionally or accidentally shot Scroggin.

We further find that the evidence found at the scene did not tend to confuse or distract the jury. *See* Tex. R. Evid. 403. In this case, the testimony merely established that drugs were found at the scene; there was no evidence that Taylor was in possession of those drugs. Thus, the risk did not substantially outweigh the probative value of the

9

evidence when the evidence pertained to the context of the murder. *See id.* There was no need to elaborate on the explanation of drugs found at the scene for the jury to evaluate its probative force. Indeed, given its tendency to prove motive and intent, one could reasonably conclude that it actually served to focus the jury's attention on the underlying crime and why it occurred. *Prewitt,* 133 S.W. 3d at 865.

Finally, the evidence did not consume an inordinate amount of trial time. *See Gigliobianco,* 210 S.W.3d at 641–42. It was not repetitive in nature, and the time needed to develop the evidence was not significant. In light of the foregoing reasons, we hold that the trial court did not abuse its discretion in admitting the evidence of methamphetamine over Taylor's rule 403 objection.

### 3. Texas Rules of Evidence 404

Taylor also claimed that the evidence of methamphetamine found at the scene was proof of an extraneous offense. Extraneous-offense evidence may be admissible for purposes other than showing character conformity, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX. R. EVID. 404(b). Rebuttal of a defensive theory is also a permissible purpose under rule 404(b). *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). Accordingly, the State may introduce extraneous offense evidence to rebut a defensive theory that was raised in the defendant's opening statement. *Powell v. State*, 63 S.W.3d 435, 439 (Tex. Crim. App. 2001); *Lopez v. State*, 288 S.W.3d 148, 171 (Tex. App.—Corpus Christi 2009, pet. ref'd).

Rule 404 provides that evidence of another crime, wrong, or act also may be admissible as same–transaction contextual evidence where several crimes are

10

intermixed, blended with one another, or connected so that they form an indivisible criminal transaction. *Wyatt,* 23 S.W.3d at 25. However, under rule 404(b), same-transaction contextual evidence is admissible only when the offense would make little or no sense without also bringing in that evidence, and it is admissible only to the extent that it is necessary for the jury to understand. *Id.*

The code of criminal procedure specifically allows for the admission of evidence in a murder prosecution of "all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." TEX. CODE CRIM. PROC. ANN. § 38.36(a) (West, Westlaw through 2013 3d C.S.). However, article 38.36 remains subject to rules of evidence 404(b) and 403, such that, if an objection is properly made, the trial court must find a relevant and material non-character conformity purpose for which such evidence is offered. *Smith v. State*, 5 S.W.3d 673, 679 (Tex. Crim. App. 1999).

The State presented evidence that methamphetamine was found at the scene and that the victim had an excessive amount of methamphetamine in his system. Such evidence was admissible because the jury could reasonably infer the prior relationship between the victim and Taylor was one that involved drugs. *See Carmouche v. State*, 10 S.W.3d 323, 330 (Tex. Crim. App. 2000) (noting weapons, violence, and drugs go hand in hand); *Wilson v. State*, 132 S.W.3d 695, 700 (Tex. App.—Amarillo 2004, pet. ref'd) (finding that weapons and drugs are associated with the drug trade). Accordingly, the trial court did not abuse its discretion in admitting the evidence of methamphetamine over Taylor's rule 404 objection. We overrule Taylor's first issue.

11

### III.    SUFFICIENCY OF THE EVIDENCE

Taylor's second issue argues that the denial of her motion for a directed verdict was in error because the facts were legally insufficient for a murder conviction.[1]

## A.  Standard of Review

We apply the standard articulated in *Jackson v. Virginia* to determine whether the evidence is sufficient to support a criminal conviction.  *See* 443 U.S. 307, 319 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (holding that the *Jackson* standard of review is the "only standard" that should be applied in a sufficiency review).  Under *Jackson*, we examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  443 U.S. at 319.

The elements of the offense are measured as defined by a hypothetically correct jury charge.  *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App.1997)).  Such a charge "[is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."  *Villarreal*, 286 S.W.3d at 327.   Under a hypothetical murder charge, Taylor would be guilty of murder if she:

    (1)    intentionally or knowingly caused the death of Scroggin;

    (2)    intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused Scroggin's death; or

---

[1] We construe Taylor's second issue as a legal sufficiency challenge to the evidence supporting the verdict.

(3)  committed or attempted to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempted, he committed or attempts to commit an act clearly dangerous to human life that causes the death of an individual

*See* TEX. PEN. CODE ANN. § 19.02.

We defer to the jury's determinations of credibility and weight to be given to the evidence because jurors are the sole fact-finders. *See Brooks*, 323 S.W.3d at 899; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West, Westlaw through 2013 3d C.S.) ("The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony . . . ."). Each fact need not point directly and independently to the guilt of Taylor, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See Hooper v. State*, 214 S.W.3d 9, 13 (2007).

Therefore, in analyzing legal sufficiency, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Id.* When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Id.* Direct and circumstantial evidence are treated equally in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.*

**B. Discussion**

13

The jury was presented with two conflicting theories upon by which to assess the credibility and demeanor of the witnesses who testified at trial. The jury heard testimony that Taylor described several different versions of what transpired the night Scroggin died. Initially, Taylor claimed the firearm accidentally discharged while she shook her purse, yet there was no bullet hole found in her purse. Then, she said the firearm discharged on the ground after she dumped contents from her purse. Lastly, she said the firearm discharged in her hand after it fell out of her purse as she picked it up. However, the heavy trigger pull on the pistol in question and the absence of a discharge in a drop test refuted her version of the events. The jury was free to discredit Taylor's claim that the shooting was an accident when Taylor's own inconsistent statements and the physical evidence suggested otherwise. *See Turner v. State*, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991); *Cantu v. State*, 395 S.W.3d 202, 208–09 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). The fact finder may consider a defendant's implausible and inconsistent statements as affirmative evidence of guilt. *See Gear v. State*, 340 S.W.3d 743, 747 (Tex. Crim. App. 2011); *Padilla v. State*, 326 S.W.3d 195, 201 (Tex. Crim. App. 2010). By its verdict, the jury rejected Taylor's statements about the firearm accidentally discharging either in her purse, on the ground, or in her hand.

Moreover, during Detective Garcia's testimony, the State played a DVD of Taylor's recorded statements to the police. As the court of criminal appeals has noted, "the carriage, behavior, bearing, manner and appearance of a witness—in short, his 'demeanor'—is a part of the evidence." *Padilla v. State*, 326 S.W.3d 195, 201 (Tex. Crim. App. 2010) (quoting *Dyer v. MacDougall,* 201 F.2d 265, 268–69 (2nd Cir. 1952)). Here, inconsistent and implausible statements, in combination with the jury's possible

14

assessment of Taylor's visibly guilty demeanor, may be considered as affirmative evidence of guilt. *See Gear*, 340 S.W.3d at 747; *Padilla*, 326 S.W.3d at 201–02 (citing *Dyer,* 201 F.2d at 268–69).

We must defer to the jury's interpretation of this evidence. *See Brooks*, 323 S.W.3d at 899. After considering the evidence in the light most favorable to the verdict, we conclude that a rational juror could have found that Taylor intentionally or knowingly caused the death of Scroggin. Additionally, a rational juror could have found that Taylor intended to cause serious bodily injury and thus committed an act clearly dangerous to human life that caused the death of Scroggin. Because the evidence is legally sufficient to support a murder conviction, we overrule Taylor's second issue.

## IV.    JURY CHARGE

Taylor's third issue is that the trial court improperly instructed the jury to convict Taylor with proof other than proof beyond a reasonable doubt.

### A. Standard of Review

In analyzing a jury-charge issue, we must first decide whether error exists. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003) (citing *Hutch v. State*, 922 S.W.2d 166, 170–71 (Tex. Crim. App. 1996)). Then, if we find error, we analyze that error for harm. *Id.* at 453. Preservation of charge error does not become an issue until we assess harm. *Id.* at 202. The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection. *Id.* (citing *Hutch*, 922 S.W.2d at 171).

Under *Almanza,* jury charge error requires reversal when the defendant has

15

properly objected to the charge and we find "some harm" to his rights. *Almanza v. State,* 686 S.W.2d 157 (Tex. Crim. App. 1985); *see also Hutch,* 922 S.W.2d at 171. When the defendant fails to object or states that he has no objection to the charge, we will not reverse for jury-charge error unless the record shows "egregious harm" to the defendant. *Bluitt v. Sate,* 137 S.W.3d 51 (Tex. Crim. App. 2004); *Almanza,* 686 S.W.2d at 171. Thus, we review alleged charge error by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal. *See Posey v. State,* 966 S.W.2d 57, 60 & n.5 (Tex. Crim. App. 1998).

## B.      The Charge

The court instructed the jury as follows:

The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

It is not required that the prosecution prove guilt beyond all doubt; it is only required that the prosecution's proof excludes all "reasonable doubt" concerning the defendant's guilt.

Taylor argues that this charge allowed the jury to convict her by proof less than proof beyond a reasonable doubt.

## C.      Discussion

The Texas Court of Criminal Appeals has held that the inclusion of a "beyond all possible" instruction is not an abuse of discretion. *See Mays v. State,* 318 S.W.3d 368, 389 (Tex. Crim. App. 2010); *Woods v. State,* 152 S.W.3d 105, 114–16 (Tex. Crim. App. 2004). Nor does such an instruction lessen the State's burden of proof, confuse the jury, or negate the statutory burden of proof language. *See Ruiz v. State,* 228 S.W.3d 691, 692 n.1 (Tex. App.—Corpus Christi 2005, no pet.); *see also O'Canas v. State,* 140 S.W.3d

16

695, 699–702 (Tex. App.—Dallas 2003, pet. ref'd) (holding that "all possible doubt" language is not a definition of reasonable doubt); *Ochoa v. State,* 119 S.W.3d 825, 829 (Tex. App.—San Antonio 2003, no pet.) (same); *Best v. State,* 118 S.W.3d 857, 865 (Tex. App.—Fort Worth 2003, no pet.) (holding that trial court did not err by submitting a jury charge distinguishing reasonable doubt from possible doubt); *Torres v. State,* 116 S.W.3d 208, 212 (Tex. App.—El Paso 2003, no pet.) (holding the challenged instruction regarding "all possible doubt" does not constitute a definition of reasonable doubt). The complained of charge includes the sort of "beyond of all doubt" language held to be permissible by all of the foregoing courts; therefore, we reach the same conclusion as those courts and hold that no error existed in the trial court's jury charge. We overrule Taylor's third issue.

## V. CONCLUSION

Having overruled all of Taylor's issues, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
3rd day of July, 2014.