# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00298-CR

**Dale Erwin Arldt, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
### NO. 14,823, HONORABLE CHRISTOPHER DARROW DUGGAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Dale Erwin Arldt was charged with criminal solicitation. *See* Tex. Penal Code § 15.03(a). Specifically, he was charged with hiring someone to kill his wife, Wendy Arldt,[1] and her presumed boyfriend, Steven Maass. After a trial, the jury found Dale guilty and imposed a sentence of 40 years' confinement. *See id.* §§ 15.03(d) (explaining that offense is first-degree felony if crime solicited was capital offense), 19.03(a)(3) (stating that person commits capital murder if he "employs another to commit the murder for remuneration or the promise of remuneration"); *see also id.* § 12.32 (providing that punishment range for first-degree felony is "life or . . . any term of not more than 99 years or less than 5 years"). Subsequent to the imposition of his sentence, Dale appealed his conviction. We will affirm the district court's judgment of conviction.

---

[1] Because the victim and the defendant share last names, we will refer to them by their first names.

**DISCUSSION**

In his sole issue on appeal, Dale contends that the district court "erred by failing to instruct the jury on the affirmative defense of renunciation."

As mentioned above, Dale was charge with criminal solicitation. Under the Penal Code, a person commits criminal solicitation "if, with intent that a capital felony . . . be committed, he requests, commands, or attempts to induce another to engage in specific conduct that, under the circumstances surrounding his conduct as the actor believes them to be, would constitute the felony or make the other a party to its commission." Tex. Penal Code § 15.03(a). There is an affirmative defense to that crime that applies if "the actor countermanded his solicitation . . . before commission of the object offense and took further affirmative action that prevented the commission of the object offense" "under circumstances manifesting a *voluntary and complete renunciation* of his criminal objective." *Id.* § 15.04(b) (emphasis added); *see also McGann v. State*, 30 S.W.3d 540, 547 (Tex. App.—Fort Worth 2000, pet. ref'd) (explaining that "renunciation must be voluntary and complete, and it must avoid commission or prevent commission of the offense").

On appeal, Dale contends that he was entitled to an instruction regarding the affirmative defense. "As a general rule, an accused has the right to an instruction on any defensive issue raised by the evidence, whether such evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the evidence." *Shaw v. State*, 181 S.W.3d 450, 452 (Tex. App.—Waco 2005), *aff'd*, 243 S.W.3d 647 (Tex. Crim. App. 2007); *see* Tex. Penal Code § 2.03(c) (explaining that defense issue "is not submitted to the jury unless evidence is admitted supporting the defense"). A defense is raised "by the evidence if

there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw*, 243 S.W.3d at 657-58. When determining whether a defense has been raised by the evidence, the court "must rely on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven." *Id.* at 658. On appeal, the issue of "[w]hether a defense is supported by the evidence is a sufficiency question reviewable . . . as a question of law." *Id.*

When arguing that an instruction should have been provided, Dale points to the testimony of Brian Dismukes. Dismukes was a detective with the Texas Department of Public Safety who went undercover to investigate an allegation that Dale was seeking to hire someone to kill his wife and Maass. In his testimony, Dismukes explained that he phoned Dale and told him that a mutual acquaintance of theirs had informed him about Dale's intentions to hire someone. Further, Dismukes testified that the two exchanged several phone calls in which they discussed taking "care of [Wendy]." In addition, Dismukes stated that he told Dale that he was interested in the job and that the two ultimately met at a convenience store to finalize the details. Regarding their conversation at the convenience store,[2] Dismukes stated that after the two discussed the plan in detail, he asked Dale to shake his hand to solidify the agreement but that Dale refused.

The refusal to shake Dismukes's hand forms the basis for Dale's issue on appeal. In essence, Dale contends that by failing to shake Dismukes's hand, he refused to "seal the deal," which constituted a voluntary and complete renunciation of his criminal solicitation. As support for this assertion, Dale refers to the historical significance of handshakes.

---

[2] During the trial, Dismukes explained that the audio equipment that had been set up to record the conversation between him and Dale at the convenience store malfunctioned.

Although Dale correctly points out that Dismukes testified that Dale refused to shake his hand, the remainder of Dale's testimony concerning his interaction with Dale prior to and after the offered handshake undermines Dale's assertion that an instruction should have been provided. *Cf. Prewitt v. State*, 133 S.W.3d 860, 863 (Tex. App.—Amarillo 2004, pet. ref'd) (providing that when determining whether lesser-included-offense instruction should be given, context of statements relied upon by defendant must be considered). Regarding the discussion occurring beforehand, Dismukes testified that Dale communicated various reasons why he wanted to hire someone to kill Wendy and Maass, provided information about Wendy's work and Maass's home, offered to lend a shotgun for the job, discussed ways to minimize evidence left at the scene, and agreed to pay $5,000 for the task. *Cf. McGann*, 30 S.W.3d at 548 (concluding that defendant was not entitled to renunciation instruction even though defendant only gave partial payment and testified that he did not believe hit man would proceed without full payment because defendant never expressed desire to abandon plan and because defendant gave hit man information to further plot, including his wife's address and information about her daily routines). Furthermore, Dismukes related that Dale did not seem nervous and was eager "to get down to business and . . . work out the details of what [they were] going to do." In addition, Dismukes recalled that Dale stated that if he could not find anyone to do the job, he "was scared that he was going to do it himself."

Regarding the events occurring after the offered handshake, Dismukes stated that when he asked Dale why he refused to shake hands, Dale "said, basically, that he felt if we shook hands . . . and I was a police officer, that would get him in more trouble. That would make it official, basically." In other words, Dismukes related that Dale's refusal was motivated by a fear of further

4

punishment rather than a "a voluntary and complete renunciation of his criminal objective." *See* Tex. Penal Code § 15.04(b). In addition, Dismukes stated that after Dale refused to shake his hand, they continued to discuss the details of the murder plot until Dale was arrested and that Dale never indicated that he was changing his mind.

In light of the preceding, we conclude that there was no evidence that would have justified the inclusion of an instruction on renunciation in the jury charge. Accordingly, we also conclude that the district court properly refused Dale's request and overrule his issue on appeal.

## CONCLUSION

Having overruled Dale's issue on appeal, we affirm the district court's judgment of conviction.

_____
David Puryear, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed: August 28, 2014

Do Not Publish